[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11428
Non-Argument Calendar

_____

D.C. Docket No. 2:11-cv-00191-RWS

CARLOS H. HENRIQUEZ,

Plaintiff-Appellant,

versus

EL PAIS Q'HUBOCALI.COM,
RODRIGO LLOREDA MENA,
ALFREDO DOMINGUEZ BORRERO,
MARIA LUCIA LLOREDA GARCES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 6, 2012)

Before HULL, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Carlos Henriquez, proceeding *pro se*, appeals the dismissal of his diversity lawsuit for lack of personal jurisdiction over the defendants, El Pais Q'Hubocali.com ("El Pais"), a corporation registered and doing business in Colombia, and several individuals associated with El Pais, who were also citizens of Colombia (collectively "the defendants").

Henriquez, a citizen of Georgia, filed this lawsuit against the Colombian defendants in the District Court for the Northern District of Georgia. He alleged that the defendants published defamatory articles against him in El Pais's newspapers in Spanish in Colombia and that an online version of the Spanish newspaper was visible in Georgia. After review, we affirm the district court's dismissal of Henriquez's complaint for lack of personal jurisdiction over the Colombian defendants.

## I. BACKGROUND FACTS

### A.    Subject of the Newspaper Articles

According to Henriquez's complaint, he and his wife had traveled to Colombia to seek treatment for his wife's infertility.[1] After the treatment attempts proved unsuccessful, the fertility clinic in Colombia advised the couple to retain a

---

[1]Because this case was decided on a motion to dismiss, we take the facts from Henriquez's complaint and accept them as true. See Furry v. Miccosukee Tribe of Indians of Fla., 685 F.3d 1224, 1226 n.2 (11th Cir. 2012).

2

surrogate mother and provided them with a list of local women willing to become surrogates.

Henriquez and his wife entered into a contract with one of the listed women, who eventually became pregnant and gave birth to twins.  Although the surrogate mother received "good financial compensation" for her services, she demanded more money than the agreement called for.  When Henriquez refused, the surrogate mother decided to keep the children and ask for alimony.  Henriquez and his wife sued the surrogate mother in a Colombian court, which ruled in their favor and awarded them custody of the children.  Shortly thereafter, Henriquez, his wife, and the children returned to the United States.

The surrogate mother appealed that ruling to the highest court in Colombia. That high court eventually issued a decision, which became public in July 2010.[2]

The defendant El Pais then published articles about the case in Colombian newspapers, and also placed the articles online, which meant they could be accessed in the United States.  According to Henriquez, the articles falsely stated that (1) the highest court ordered the children returned to the surrogate mother, thereby implying that Henriquez abducted the children; (2) the children were born

[2]Henriquez's complaint does not state exactly what "the highest court" in Colombia held or the name of that court.

3

as a result of Henriquez's illicit affair with the surrogate mother; and (3) the eggs used in the in vitro fertilization were proven to belong to the surrogate mother, rather than Henriquez's wife.

## B.    Federal Complaint in the United States

Based on the above facts, Henriquez's complaint alleged two counts of "defamation per se" and asked for compensatory and punitive damages exceeding $75,000.  Henriquez alleged that the above newspaper articles contained "false malicious defamation injuring [his] reputation and exposing him to public hatred, contempt and ridicule."  His complaint alleged that the district court had personal jurisdiction over the Colombian defendants because their defamatory statements were published in print and on their web page that was "seen in Georgia."

The Colombian defendants moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim.  As to personal jurisdiction, the defendants argued that Henriquez's complaint failed to allege sufficient facts to establish jurisdiction under Georgia's long-arm statute, Ga. Code Ann. § 9-10-91.  Before the district court ruled on the defendants' motion to dismiss, Henriquez filed numerous exhibits, consisting mostly of images of the defendants'

web pages and the advertisements contained therein.[3]

More specifically, some of the exhibits are copies of the defendants'
Internet web pages containing advertisements by U.S. companies, such as
Comcast, Sprint, Allstate, and Publix.[4]  The online advertisements, seen on the
defendants' web pages, appear to contain links to the websites of the U.S.
companies, such as Comcast or Allstate.  A user's clicking on these links will take
the user to the U.S. companies' websites, which, in turn, allows the user to see that
the U.S. companies have locations in Georgia and are doing business in Georgia.
And some of Henriquez's exhibits appear to be separate images of the U.S.
companies' own websites, showing the companies' Georgia locations.

In addition to the above, Henriquez submitted copies of several web pages,
all in Spanish, from a company called Pautefacil.com, as well as a "descriptive
commentary" on the exhibits.  In part of his commentary, Henriquez stated that the
Pautefacil web pages explained how the defendants obtained the advertising
customers that advertised on the defendants' online newspapers.  He stated that
Pautefacil "gets the [customers]" and "provides the customer[s]" to the

---

[3]The defendants did not object to the authenticity of the exhibits in the district court, and, therefore, we consider them part of the record on appeal.

[4]All of the defendants' web pages in the exhibits, and most of the advertisements on those web pages, appear in the Spanish language.

5

newspapers, and that "[a]ny time people in US and Georgia click in their computers to access service of purchase goods as result of Pautefacil.com sponsoring Defendants, Pautefacil.com makes money and Defendants too."

After submitting the exhibits, Henriquez moved to amend his complaint, indicating that those exhibits supported personal jurisdiction. In his proposed amended complaint, Henriquez alleged that personal jurisdiction existed under Georgia's long-arm statute because, by targeting Henriquez and his family, the defendants purposefully directed the defamatory publications at Georgia. According to Henriquez, the defendants published online advertisements that offered goods and services of companies operating in Georgia, and the defendants thereby derived "good revenue." He alleged that the advertisements contained links to the companies' Georgia locations and that one of the companies advertised on the defendants' website was based in Georgia.

Alternatively, Henriquez alleged that the district court could exercise personal jurisdiction under the federal long-arm statute, Federal Rule of Civil Procedure 4(k), because his claims arose under federal law.

The defendants responded that Henriquez's amended complaint did not support personal jurisdiction. The defendants pointed out that the advertisements submitted by Henriquez were placed on the defendants' websites by an "ad server"

6

owned and operated by Pautefacil.com, a Colombian advertising company. Because Henriquez lived in Georgia, the advertisements he saw were selected by Pautefacil to showcase goods and services available in Georgia. The defendants stated that El Pais's websites did not market their own goods, but were passive websites that disseminated news stories.

The district court granted the defendants' motion and dismissed the lawsuit, concluding that Henriquez's allegations were insufficient to establish personal jurisdiction under subsections (1) and (3) of Georgia's long-arm statute. The district court noted that it had considered the additional factual allegations raised in Henriquez's amended complaint, but stated that those allegations did not alter the court's conclusion that personal jurisdiction was lacking. The district court denied as moot several of Henriquez's pending motions, including his motion to amend the complaint, his motion for a conference under Federal Rule of Civil Procedure 26(f), and his motion for summary judgment.

## II. DISCUSSION

A.    **Personal Jurisdiction**

1.    Forum State's Long-Arm Statute

We apply a two-step inquiry in determining whether personal jurisdiction exists over a nonresident defendant. Diamond Crystal Brands, Inc. v. Food

Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010).[5]  First, we examine

whether the exercise of jurisdiction is appropriate under the forum state's

long-arm statute, and, second, whether the exercise of jurisdiction violates the Due

Process Clause of the Fourteenth Amendment to the United States Constitution.

Id. at 1257-58.  This Court has concluded that Georgia's long-arm statute "does

not grant courts in Georgia personal jurisdiction that is coextensive with

procedural due process," but instead "imposes independent obligations that a

plaintiff must establish for the exercise of personal jurisdiction that are distinct

from the demands of procedural due process."  Id. at 1259.  "[W]e must interpret

and apply Georgia's long-arm statute in the same way as would the Georgia

Supreme Court."  Id. at 1258.

The two provisions of Georgia's long-arm statute in Ga. Code. Ann.

§ 9-10-91 at issue here are subsections (1) and (3), which provide:

> A court of this state may exercise personal jurisdiction over any
> nonresident . . . , as to a cause of action arising from any of the
> acts . . . enumerated in this Code section, in the same manner as if he
> or she were a resident of this state, if in person or through an agent,
> he or she:

---

[5]We review de novo a district court's dismissal of a complaint for lack of personal jurisdiction.  Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005).  A plaintiff who seeks the exercise of personal jurisdiction over a non-resident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (quotation marks omitted).

(1) Transacts any business within this state;

. . . .

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

Ga. Code. Ann. § 9-10-91(1), (3).[6]

Under Georgia law, the "transacts any business" provision in § 9-10-91(1) grants personal jurisdiction over a non-resident defendant if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006). Here, Henriquez has failed to establish the second prong because his complaints have not alleged, and his exhibits do not show, that his cause of action for defamation arose out of, or was connected to, any business transaction in Georgia. Henriquez's defamation claims arose out of the defendants' publication of defamatory news articles on their websites, not the defendants' placement of advertisements from U.S. companies

---

[6]The long-arm statute contains four other conditions under which a court may exercise personal jurisdiction over a non-resident, but none of the other conditions applies to this case. See Ga. Code. Ann. § 9-10-91. A plaintiff may establish personal jurisdiction by showing the existence of any one condition. See id.

9

on their websites. Thus, the district court could not exercise personal jurisdiction under subsection (1) of Georgia's long-arm statute, see id., and we are left to decide whether jurisdiction existed under subsection (3).

To establish jurisdiction under § 9-10-91(3), Henriquez had to show, among other things, that the defendants "regularly" conducted or solicited business in Georgia, or derived "substantial revenue from goods used or consumed or services rendered" in Georgia. See Ga. Code. Ann. § 9-10-91(3). According to Henriquez's allegations and even the evidence he submitted, the defendants were residents of Colombia and operated their business in Colombia. Their only alleged contact with Georgia consisted of displaying advertisements of various companies on their Internet websites, including advertisements of a company based in Georgia. There is no allegation, much less evidence, that the defendants secured these advertisements directly from companies in Georgia or through any contact (telephone call, letter, or any type of communication) with any company in Georgia. Just the opposite, the defendants obtained the advertisements from Pautefacil.com, a Colombian ad server or advertising company. The fact that a particular website displays an advertisement that is viewable in Georgia or shows a company that does business in Georgia does not, by itself, mean that the website owner had any contact with Georgia. Thus, Henriquez has failed to allege or show that the defendants actually conducted or solicited business in Georgia, much less

10

on a regular basis, or that they derived substantial revenue from goods used or services rendered in Georgia.  See Smith v. Air Ambulance Network, 427 S.E.2d 305, 305 (Ga. Ct. App. 1993) (stating that "mere placement of advertisements in Georgia" was insufficient to show that a defendant purposefully transacted business in the state, such as to establish personal jurisdiction).  Accordingly, § 9-10-91(3) did not authorize personal jurisdiction over the defendants.  Because Henriquez failed to demonstrate jurisdiction under Georgia's long-arm statute, we need not decide whether jurisdiction was proper under the Due Process Clause. See Diamond Crystal Brands, Inc., 593 F.3d at 1257-58.

2.    Federal Rule of Civil Procedure 4(k)(2)

Henriquez contends that personal jurisdiction existed under Rule 4(k)(2), the "national long-arm statute."  See Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).  Under Rule 4(k)(2), when a defendant is not subject to the jurisdiction of any one state, a court may "aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must arise under federal law; and, (2) the exercise of jurisdiction must be consistent with the Constitution and laws of the United States."  Id. (quotation marks omitted); see Fed. R. Civ. P. 4(k)(2).  Because Henriquez's claims of defamation arose under state law, not federal law, the district court could not exercise jurisdiction under Rule 4(k)(2).

11

We recognize that, in his proposed amended complaint, Henriquez mentioned that his action arose under 42 U.S.C. § 1983 and that the defendants violated his constitutional right to privacy.  However, § 1983 grants a cause of action only against persons who acted "under the color of state law."  Loren v. Sasser, 309 F.3d 1296, 1303 (11th Cir. 2002).  Similarly, the constitutional right to privacy "restricts the Government's power to regulate or intrude on activity involving fundamental rights."  Garcia v. United States, 666 F.2d 960, 965 (11th Cir. 1982) (emphasis added); see also Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 936, 102 S. Ct. 2744, 2753 (1982) ("[M]ost rights secured by the Constitution are protected only against infringement by governments." (quotation marks omitted)).  Because Henriquez has not alleged any deprivation of rights by, or with the help of, the state or federal government, his claims do not arise under § 1983 or the Constitution, thereby precluding personal jurisdiction under the national long-arm statute.  See Fed. R. Civ. P. 4(k)(2).[7]

## B.    Jurisdictional Discovery

We review the district court's denial of discovery for abuse of discretion.

---

[7] For the first time on appeal, Henriquez argues that his claims also arose under the International Covenant on Civil and Political Rights ("ICCPR").  However, we do not review issues raised for the first time on appeal except in five situations, none of which applies here. See Higginbottom v. Carter, 223 F.3d 1259, 1260 (11th Cir. 2000); see also Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1332 (11th Cir. 2004) (listing the five circumstances in which we will hear claims raised for the first time on appeal).

White v. Coca-Cola Co., 542 F.3d 848, 853 (11th Cir. 2008).  "[T]he plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction."  Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984).  However, a district court does not abuse its discretion in dismissing the plaintiff's action for lack of personal jurisdiction, even before jurisdictional discovery occurs, when the plaintiff has not diligently pursued such discovery despite the opportunity to do so.  See United Technologies Corp. v. Mazer, 556 F.3d 1260, 1280-81 (11th Cir. 2009) (affirming the district court's dismissal of plaintiff's claims for lack of personal jurisdiction before the plaintiffs conducted jurisdictional discovery).  Indeed, in Mazer, we reasoned that, although the plaintiff recognized the need for jurisdictional discovery, the plaintiff never formally moved for such discovery and failed to take reasonable steps in seeking discovery during the more than four months that the defendant's dismissal motion was pending.  Id.

In this case, Henriquez was certainly aware of the need for jurisdictional discovery, and, in fact, submitted numerous exhibits to support his allegation that personal jurisdiction was proper.  However, Henriquez never formally moved for any additional jurisdictional discovery and did not attempt to seek such discovery, even though nearly six months passed between the defendants' motion to dismiss

13

and the district court's order of dismissal.[8]  Accordingly, we cannot say that the district court abused its discretion in dismissing Henriquez's complaint before he could conduct any additional discovery.  See Mazer, 556 F.3d at 1280-81.  In light of the foregoing, we affirm.[9]

**AFFIRMED.**

---

[8]Henriquez did file a "motion to compel disclosure" of documents, namely, copies of certain pages of the defendants' newspaper, but this request appears to have concerned the merits of Henriquez's defamation claims rather than jurisdiction.

[9]Henriquez's brief raises two additional claims, namely, that the district court (1) erred in denying his motion for a conference under Federal Rule of Civil Procedure 26(f), and (2) erred in denying his motion for summary judgment.  These arguments warrant little discussion, however. Because the district court properly dismissed Henriquez's complaint for lack of personal jurisdiction, the court did not err in denying the above motions as moot.